UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Fernando Gutierrez Torres<br>                         Petitioner,<br><br>         v.<br><br>Kristi NOEM, Secretary, U.S. Department of Homeland Security; Department of Homeland Security, in her official capacity;<br><br>Todd M. LYONS, Acting Director of Immigration and Customs Enforcement; Immigration and Customs Enforcement, in his official capacity;<br><br>Peter BERG, Director, St. Paul Field Office, Immigration and Customs Enforcement, in his official capacity;<br><br>Samuel J. OLSON, Field Office Director of Enforcement and Removal Operations, Chicago Field Office, Immigration and Customs Enforcement, in his official capacity;<br><br>John DOE, Sheriff of the UNKNOWN County Jail in UNKNOWN COUNTY, Minnesota, custodian of detainees of the UNKNOWN County Jail,<br><br>                         Respondents. | Case No._____<br><br>**PETITION FOR WRIT OF HABEAS CORPUS** |

## I. INTRODUCTION

1. Petitioner, Fernando Gutierrez Torres, is a non-citizen from Mexico. He has lived in the United States since 2005, when he entered the United States without inspection.

2. For the past 20 years, Petitioner has lived peaceably in Minnesota. He has strong ties to the community. He has a 14-year-old United States Citizen daughter with special medical needs. He has no criminal history. Petitioner likely qualifies for cancellation of removal under 8 U.S.C. § 1229b.

3. On January 19, 2026, Petitioner was detained by ICE in St. Louis Park, Hennepin County, Minnesota, outside of his apartment complex. Petitioner believes that he was targeted by Respondents based on his appearance as a hispanic male.

4. Respondents will argue that he is detained under 8 U.S.C. § 1226. They will also likely immediately move him outside the district of Minnesota in order to deprive this court of jurisdiction.

5. Petitioner's detention on this basis violates the plain language of the Immigration and Nationality Act. Section § 1225(b)(2)(A) does not apply to individuals like Petitioner who previously entered and are now residing in the United States. Instead, such individuals are subject to a different statute, § 1226(a), that allows for release on conditional parole or bond.

6. Respondents appear to justify Petitioner's detention by invoking 8 U.S.C §1225 and the 2025 DHS "Interim Guidance Regarding Detention Authority for Applicants for Admission," which treats non-citizens arrested in the United States and charged with inadmissibility as "applicants for admission" subject to mandatory detention.

7. Respondents' new legal interpretation of § 1226(a) is plainly contrary to the statutory framework and contrary to decades of agency practice in applying 1226(a) to people like Petitioner. Courts across the country have rejected Petitioner's interpretation, holding that § 1225 applies *only to* non-citizens who are actively seeking admission at a port of entry. *See eg., Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal. Nov. 20, 2025)(concluding that detention of non-citizens arrested inside the United States is governed by § 1226(a) and that DHS cannot reclassify them as "applicants for admission" to avoid bond hearings).

8. Petitioner is a member of the class certified by the court in *Maldonado Bautista v. Noem*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025). The court in *Maldonado Bautista* granted class certification and declared that all class members are eligible for bond hearings under 8 U.S.C. § 1226. *Id*. at *1.

9. Nevertheless, on January 16, 2026, the Executive Office for Immigration Review (EOIR) issued guidance advising all immigration judges to **defy the federal court's ruling in  *Maldonado Bautista*.**[1]

10. Accordingly, Petitioner seeks a writ of habeas corpus requiring that he be released from detention, or in the alternative, that he be afforded an individualized bond hearing before the Executive Office for Immigration Review (EOIR) pursuant to 8 C.F.R. §§ 1003.19, 1236.1.

---

[1] https://www.aila.org/library/practice-alert-eoir-issues-nationwide-guidance-on-maldonado-bautista

## II. PARTIES

11. Petitioner, Fernando Gutierrez Torres, is a 46-year-old native and citizen of Mexico, who entered the United States without inspection in 2005.

12. Respondent Kristi Noem is the Secretary of Homeland Security. She is sued in her official capacity. In that capacity, Defendant Noem is responsible for overseeing the enforcement of federal immigration policies, including those that resulted in the detention of Petitioner.

13. Respondent Todd Lyons is the Acting Director of Immigration and Customs Enforcement (ICE). He is sued in his official capacity. As the head of ICE, he is responsible for decisions related to the detention and removal of certain noncitizens, including Petitioner. As such, he is also the legal custodian of Petitioner.

14. Respondent Peter Berg is the Director of the St. Paul Field Office of ICE's Enforcement and Removal Operations division. As such, Peter Berg is Petitioner's immediate custodian and is responsible for Petitioner's detention and removal. He is sued in his official capacity.

15. Respondent Samuel Olson is the Chicago Field Office Director of U.S. Immigration and Customs Enforcement (ICE), which has administrative jurisdiction over Petitioner's detention.

16. Respondent John Doe is the Sheriff/Custodian of detainees. He is sued in his official capacity. In that capacity, he is the custodian of detained non-citizens, including Petitioner.

### III. JURISDICTION AND VENUE

17. This court has subject-matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause). Federal questions in this case arise under the Immigration and Naturalization Act, 8 U.S.C. § 1101-1524, and the United States Constitution.

18. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 et. seq., the Declaratory Judgment Act, 28 U.S.C. § 2201 et. seq., the All Writs Act, 28 U.S.C. § 1651, and the Immigration and Nationality Act, 8 U.S.C. § 1252(e)(2).

19. Under 28 U.S.C. § 2241 and § 1391(b), (e), venue is proper in this district. Venue is proper because Petitioner is in Respondents' custody in the District of Minnesota. Venue is further proper because a substantial part of the events or omissions giving rise to Petitioner's claims occurred in this district, where Petitioner is now in Respondent's custody. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees, officers, and agencies of the United States.

### IV. EXHAUSTION OF REMEDIES

20. No statutory requirement of administrative exhaustion applies to Petitioner's challenge to the unlawfulness of his detention. Moreover, the judicially created "general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts" does not apply to Petitioner's present challenge, as there are no prescribed administrative remedies to which he could resort. *McCarthy v. Madigan*, 503 U.S. 140, 144–45 (1992), superseded by statute on other grounds as recognized in *Woodford v. Ngo*, 548 U.S. 81 (2006).

21. DHS has taken the position that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225. Further, in a published decision, the Board of Immigration Appeals recently

held that "Immigration Judges lack authority to hear bond requests or to grant bond to [noncitizens] who are present in the United States without admission." *Matter of Yajure Hurtado,* 29 I&N Dec. 216 (BIA 2025). Under the BIA's interpretation, regardless of her prior release and placement in standard removal proceedings, Petitioner is ineligible for bond as a noncitizen who entered the United States without inspection. Accordingly, there are no administrative remedies that Petitioner could exhaust before seeking habeas relief.

22. Further, neither an immigration judge nor the Board of Immigration Appeals can rule on a petitioner's constitutional claims. See Matter of R-A-V-P-, 27 I. & N. Dec. 803, 804 n.2 (B.I.A. 2020) (holding that IJs and the BIA lack any authority to consider the constitutionality of the statutes or regulations governing immigration detention that they administer and are bound to follow); Matter of C--, 20 I. & N. Dec. 529, 532 (B.I.A. 1992) ("[I]t is settled that the immigration judge and this Board lack jurisdiction to rule upon the constitutionality of the Act and the regulations."); see also Gonzalez v. O'Connell, 355 F.3d 1010, 1017 (7th Cir. 2004) (noting that "the BIA has no jurisdiction to adjudicate constitutional issues").

## V.   FACTUAL BACKGROUND

23. Petitioner, Fernando Gutierrez Torres, is a native and citizen of Mexico. He entered the United States without inspection in 2005.

24. Petitioner has lived in the United States for 20 years. He has no criminal history. He has a U.S. 14-year-old U.S. citizen child with special needs, who was recently hospitalized. Petitioner likely qualifies for cancellation of removal under 8 U.S.C. 1229b.

25. On January 19, 2026, Petitioner was detained at his apartment complex in St. Louis Park, Minnesota. Petitioner believes that Respondents targeted him based on his appearance as a hispanic male.

## VI. LEGAL BACKGROUND

26. As relevant here, the Immigration and Naturalization Act, 8 U.S.C. §1101-1524, describes two means of handling the custody and potential removal of noncitizens.

27. First, 8 U.S.C. § 1226(a) authorizes the detention of noncitizens in standard removal proceedings. See 8 U.S.C. § 1229a. Individuals in § 1226(a) detention are generally entitled to a bond hearing at the outset of their detention. See 8 C.F.R. §§ 1003.19(a), 1236.1(d). The text of § 1226 explicitly applies to people charged as being inadmissible, including those who entered without inspection. See 8 U.S.C. § 1226(c)(1)(E). Subparagraph (E)'s reference to such people makes clear that, by default, such people are afforded a bond hearing under subsection (a). As the Rodriguez Vazquez court explained, "[w]hen Congress creates 'specific exceptions' to a statute's applicability, it 'proves' that absent those exceptions, the statute generally applies." Rodriguez Vazquez v. Bostock, 779 F. Supp. 3d 1239, 1257 (W.D. Wash. Apr. 24, 2025) (citing Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 400 (2010)).

28. In addition, while on release, the noncitizen may apply for asylum or other relief in the United States. 8 U.S.C. § 1158. While a grant of asylum is discretionary, the right to apply for asylum is not. The Refugee Act, codified in various sections of the INA, broadly affords a right to apply for asylum to any noncitizen, like Petitioner, "who is physically present in the United States or who arrives in the United States[.]" 8 U.S.C. § 1158(a)(1); Refugee Act of 1980, § 101(a), Pub. L. No. 96-212, 94 Stat. 102 (1980).

29. The INA guarantees to noncitizens in standard removal proceedings who apply for asylum and other relief valuable procedural rights that reduce the risk of an erroneous decision. These include the rights to legal counsel, 8 U.S.C. § 1229a(b)(4)(A) and § 1362; to

present supporting evidence (both documentary and through lay and expert witness testimony) and to challenge through cross-examination adverse evidence during a full adversarial hearing before an immigration judge (IJ), 8 U.S.C. § 1148(b)(1)(B); to seek reconsideration or reopening of an adverse decision, 8 U.S.C. § 1229a(c)(6)-(7), to appeal an adverse decision of an IJ to the Board of Immigration Appeals based on the full evidentiary record, 8 U.S.C. § 1229a(c)(5), and to appeal an adverse decision of the Board to a federal circuit court of appeals, 8 U.S.C. § 1252(b).

30. Noncitizens are guaranteed Due Process under the Fifth Amendment to the U.S. Constitution. *Reno v. Flores*, 507 U.S. 292, 306 (1993).

31. The second relevant means of detention is governed by 8 U.S.C. § 1225, which provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals seeking admission under 8 U.S.C. § 1225(b)(2). Respondents treat noncitizens subject to mandatory detention under § 1225 as ineligible for bond

32. The mandatory detention scheme under 8 U.S.C. § 1225(b)(2) applies only to noncitizens arriving at U.S. ports of entry who recently entered the United States. The statute's entire framework is premised on inspections at the border of people who are "seeking admission" to the United States. 8 U.S.C. § 1225(b)(2)(A). Indeed, the Supreme Court has explained that this mandatory detention scheme applies "at the Nation's borders and ports of entry, where the Government must determine whether a[] [noncitizen] seeking to enter the country is admissible." Jennings v. Rodriguez, 583 U.S. 281, 287 (2018) (emphasis added).

33. As to 8 U.S.C. § 1225(b)(1), this subsection provides for mandatory detention of noncitizens subject to expedited removal. Because expedited removal provides very few

procedural protections, it applies narrowly to only those noncitizens who are inadmissible to the United States because they engaged in fraud or misrepresentation to procure admission or other immigration benefits, 8 U.S.C. § 1182(a)(6)(C), or who are applicants for admission without required documentation, 8 U.S.C. § 1182(a)(7). As relevant here, the government may not subject any other person to expedited removal. 8 C.F.R. § 235.3(b)(1), (b)(3).

34.     For noncitizens in expedited removal, the INA does not grant them the rights enshrined in standard removal proceedings. To begin, an immigration officer may order them removed "without further hearing or review," 8 U.S.C. § 1225(b)(1)(A)(i), unless the noncitizen has expressed an intent to apply for asylum or a fear of persecution. But even then, the noncitizens' rights are truncated. Although the immigration officer "shall refer the [noncitizen] for an interview by an asylum officer," 8 U.S.C § 1225(b)(1)(A)(i)-(ii), a "credible fear" interview differs from an asylum application. First, the INA does not, as it does during standard removal proceedings, guarantee the noncitizen with the rights to counsel, to present documents or witness testimony, or to cross-examine adverse evidence. See id. § 1225(b)(1)(B)(iv). Second if the asylum officer decides that the noncitizen does not have a credible fear of persecution, the noncitizen may seek review before an IJ, but review is limited to the record of the interview. 8 U.S.C. § 1225(b)(1)(B)(iii)(III). Finally, if the IJ concurs with the asylum officer, the noncitizen is removed without any further review by the Board of Immigration Appeals or a federal court. Only if a noncitizen passes a credible fear interview may they apply for asylum and related relief in full removal proceedings. See 8 U.S.C. § 1225(b)(1)(B); 8 C.F.R. § 208.30(f).

35.     An expedited removal order comes with significant consequences beyond removal itself. Noncitizens who are issued expedited removal orders are subject to a five-year

bar on admission to the United States unless they qualify for a discretionary waiver. 8 U.S.C.§ 1182(a)(9)(A)(i); 8 C.F.R. § 212.2. Similarly, noncitizens issued expedited removal orders after having been found inadmissible based on misrepresentation are subject to a lifetime bar on admission to the United States unless they are granted a discretionary exception or waiver. 8 U.S.C. § 1182(a)(6)(C)

36.     These two processes have governed removal proceedings for nearly three decades. The release provisions for noncitizens placed in standard removal proceedings under § 1226 and the mandatory detention provisions for noncitizens recently arriving in the United States under § 1225(b)(1) and (b)(2) were enacted in the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996, Pub. L. No. 104-–208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585.

37.     Thus, in the decades that followed, most people who entered without inspection and were placed in standard removal proceedings received bond hearings, unless their criminal history rendered them ineligible. That practice was consistent with many more decades of prior practice, in which noncitizens who were not deemed "arriving" were entitled to a custody hearing before an IJ or other hearing officer. See 8 U.S.C. § 1252(a) (1994); see also H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that § 1226(a) simply "restates" the detention authority previously found at § 1252(a)); *Martinez v. Hyde*, 2025 WL 2084238, at *8 (D. Mass. July 24, 2025) ("The idea that a different detention scheme would apply to non-citizens 'already in the country,' as compared to those 'seeking admission into the country,' is consonant with the core logic of our immigration system ") (citing Jennings v. Rodriguez, 583 U.S. at 289) (cleaned up)).

38.     On January 20, 2025, President Donald Trump issued several executive actions relating to immigration, including "Protecting the American People Against Invasion," an order (EO) setting out a series of interior immigration enforcement actions. The Trump administration, through this and other actions, has outlined sweeping, executive branch-led changes to immigration enforcement policy, establishing a formal framework for mass deportation. The "Protecting the American People Against Invasion" EO instructs the DHS Secretary "to take all appropriate action to enable" ICE, Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS) to prioritize civil immigration enforcement procedures including through the use of mass detention.

39.     On July 8, 2025, without congressional authorization, the Executive Branch announced a new policy entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission." The policy asserts that all undocumented noncitizens deemed "applicants for admission" are subject to mandatory detention under § 1225(b)(2)(A).

40.     Adopting this same position, on September 5, 2025, the Board of Immigration Appeals (BIA) issued a published decision holding that all noncitizens who entered the United States without admission or parole are considered applicants for admission and are ineligible for immigration judge bonds. *See Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).

41.     ICE and EOIR have adopted this policy even though numerous federal courts have rejected this exact conclusion. For example, after IJs in the Tacoma, Washington, immigration court stopped providing bond hearings for persons who entered the United States without inspection and who have since resided here, the U.S. District Court in the Western District of Washington found that such a reading of the INA is likely unlawful and that §

1226(a), not § 1225(b), applies to noncitizens who are not apprehended upon arrival to the United States. *Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239; see also Gomes v. Hyde, No. 1:25-CV-11571-JEK, 2025 WL 1869299, at *8 (D. Mass. July 7, 2025) (granting habeas petition based on same conclusion). Accordingly, federal courts have roundly rejected Respondent's erroneous interpretation of the INA since ICE implemented its July 8, 2025 memo. *See Pizarro Reyes v. Raycraft*, 2025 WL 2609425 (E..D. Mich. Sept. 9, 2025) (disagreeing with BIA's analysis in *Yajure Hurtado*); *Sampiao v. Hyde*, 2025 WL 2607924 (D. Mass. Sept. 9, 2025) (same); *Lopez-Campos v. Raycraft*, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Martinez v. Hyde*, CV 25-11613-BEM, 2025 WL 2084238 (D. Mass. July 24, 2025); *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025*); Garcia Jimenez v. Kramer*, No. 4:25-cv-03162-JFB-RCC, 2025 WL 2374223 (D. Neb. Aug. 14, 2025); *Aguilar Maldonado v. Olson*, No. 25-CV-3142 (SRN/SGE), 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Arrazola-Gonzalez v Noem*, 5:25-cv-01789-ODW-DFM, 2025 WL 2379285 (C.D. CA Aug 15, 2025); *Jacinto v. Trump, et al.*, 4:25-cv-03161-JFB-RCC, 2025 WL 2402271 (D. Neb. August 19, 2025); *Leal-Hernandez v. Noem*, 1:25-cv-02428-JRR, 2025 WL 2430025 (D. Minn. Aug. 24, 2025); *Herrera Torralba v. Knight*, 2:25-cv-03166-RFB-DJA (D. Nev. Sep. 5, 2025).

42.     Petitioner's detention under § 1225(b)(2) is likewise invalid. As numerous federal courts have now found, § 1225(b)(2) applies to noncitizens *seeking admission* into the United States. It does not apply to noncitizens, like Petitioner, who entered the United States without inspection, and have been placed in standard removal proceedings. In short, Respondent's detention of Petitioner under 8 U.S.C. § 1225(b)(2) is patently unlawful, violates due process,

and violates the Administrative Procedure Act. Petitioner is a member of the class certified in *Maldonado Bautista* No. 5:25-CV-01873-SSS-BFM, 2025 WL 3678485.

## VII. CLAIMS FOR RELIEF
### COUNT I

### Violation of the Immigration and Nationality Act

43. Petitioner incorporates by reference the allegations of fact set forth in the preceding paragraphs.

44. To the extent that Respondents purport to detain Petitioner pursuant to 8 U.S.C. § 1225 his detention under that statute is unlawful The mandatory detention provision at 8 U.S.C. § 1225 does not apply to all noncitizens residing in the United States who are subject to the grounds of inadmissibility. As relevant here, it does not apply to those who previously entered the country and were explicitly released under 8 U.S.C. 1226. Such noncitizens are detained under § 1226(a), unless they are subject to § 1225(b)(1), § 1226(c), or § 1231.

45. The application of § 1225 to Petitioner unlawfully mandates his continued detention and violates the INA.

### COUNT II

### Violation of Due Process
### (Arbitrary Detention)

46. Petitioner incorporates by reference the allegations of fact set forth in the preceding paragraphs.

47. The Due Process Clause of the Fifth Amendment to the U.S. Constitution applies to all persons within the United States. Once a noncitizen enters this country, whether the presence is "lawful, unlawful, temporary, or permanent," the Due Process Clause applies to the noncitizen. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

48. Petitioner has a fundamental interest in liberty and being free from official restraint.

49. The government's detention of Petitioner without a bond redetermination hearing to determine whether he is a flight risk or danger to others violates his right to due process.

### Prayer for Relief

WHEREFORE, Petitioner respectfully requests this Court to grant the following:

1. Assume jurisdiction over this matter;

2. **Issue an order enjoining Respondents from transferring Petitioner out of the District of Minnesota during the pendency of this Petition;**

3. Declare that Petitioner's current detention without an individualized determination is unlawful;

4. Issue a writ of habeas corpus ordering Respondents to release Petitioner from custody, or, in the alternative, hold a prompt bond hearing to determine whether he should remain in custody;

5. Award Petitioner attorney's fees and costs under the Equal Access to Justice Act, and on any other basis justified under law; and

6. Grant any further relief this court deems just and proper.

| | |
|---|---|
| Dated: January 19, 2026 | */s/ Evangeline Dhawan-Maloney*<br>Evangeline Dhawan-Maloney<br>*Attorney for Petitioner*<br>Atty Reg: 0401317<br>Robichaud, Schroepfer & Correia, P.A.<br>7500 Olson Memorial Highway<br>Suite 325<br>Golden Valley, MN 55427<br>612) 333-3343<br>evangeline@robichaudlaw.com |

**Verification by Petitioner's Legal Counsel**

**Pursuant to 28 U.S.C. § 2242**

I am submitting this verification because I am the Attorney for the Petitioner. I hereby verify that the statements made in the attached Petition for Writ of Habeas Corpus, including the statements regarding Petitioner's detention status are true and correct to the best of my knowledge.

<u>/s/ Evangeline Dhawan-Maloney</u>                                                    <u>January 19, 2026</u>