SANUNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Fernando T., | File No. 26-cv-445 (ECT/EMB) |
| Petitioner, | |
| v. | **OPINION AND ORDER** |
| Kristi Noem, *Secretary, U.S. Department of Homeland Security; Department of Homeland Security, in her official capacity*; Todd M. Lyons, *Acting Director of Immigration and Customs Enforcement; Immigration and Customs Enforcement, in his official capacity*; Peter Berg, *Director, St. Paul Field Office, Immigration and Customs Enforcement, in his official capacity*; Samuel J. Olson, *Field Office Director of Enforcement and Removal Operations, Chicago Field Office, Immigration and Customs Enforcement, in his official capacity*; and John Doe, *Sheriff of the Unknown County Jail in Unknown County, Minnesota, custodian of detainees of the Unknown County Jail*, | |
| Respondents. | |

Evangeline Surya Ester Dhawan-Maloney, Santana Dhawan, PLLC, Minneapolis, MN; and Ronnie Santana, Santana Law PLLC, Edina, MN, for Petitioner Fernando T.

Jesus Cruz Rodriguez, United States Attorney's Office, Lawton, OK, for Respondents Kristi Noem, Todd M. Lyons, Peter Berg, and Samuel J. Olson.

Petitioner Fernando T. seeks civil-contempt compensation for a loss he incurred because Respondents failed to comply with a court order. After arresting and detaining Fernando in Minnesota for alleged immigration-law violations, Respondents moved him

to Texas.  Respondents acknowledge that the Minnesota-to-Texas transfer violated an order that enjoined Respondents from moving Fernando to a location outside of Minnesota.  The loss in question is the cost of a plane ticket from Texas to Minnesota—$568.29.  Fernando incurred this expense because Respondents released him in Texas.  The motion will be granted.

As background, on the evening of January 19, 2026, Fernando, a citizen of Mexico, filed a Petition for Writ of Habeas Corpus, seeking his release from custody, or alternatively, a bond hearing.  *See* Pet. [ECF No. 1].  The next morning, on January 20, Fernando filed a Motion for a Temporary Restraining Order, seeking to enjoin his transfer from this District during the pendency of his Petition.  *See* ECF No. 3.  That same day at 11:23 a.m., I entered an Order enjoining Respondents from moving Fernando from the District of Minnesota during the pendency of his Petition and requiring expedited briefing on the Petition.  ECF No. 7.  On January 22, Respondents[1] filed an answer to the Petition, and their answer included the following explanation admitting they had moved Fernando to Texas:

> The undersigned counsel was randomly assigned to this case at 1425 on January 20.  In that same communication, ICE was informed of the Order enjoining removal of Petitioner from Minnesota.  On the same day, at 1503, ICE replied Petitioner was still in Minnesota and would not be removed outside the state.  This morning at 0955, Respondent was made aware Petitioner was transported to Texas.

---

[1] To clarify, when used in this Order, "Respondents" refers to the federal officials named as Respondents.

ECF No. 9 at 1–2. In other words, ICE was informed of the Order enjoining Fernando's removal from Minnesota on January 20. That same day, ICE represented that Fernando would not be moved out of Minnesota. But on January 22, ICE transferred Fernando from Minnesota to Texas.

Because of the representations in Respondents' answer, on January 23, Respondents were ordered to file a status report "identifying Fernando's present location and the schedule for his return to the District of Minnesota," further stating that "[a]bsent Respondents' assurance that Fernando will be returned to the District of Minnesota **before 11:59 p.m. on January 24, 2026**, an Order to Show Cause [would] issue, scheduling a hearing at which Respondents' counsel and the ICE official(s) responsible for Fernando's departure from Minnesota, in contravention of the Court's January 20, 2026 Order, [would] be ordered to attend." ECF No. 11 at 2–3. That same day, Respondents sent a letter to the Court, stating, "This communication confirms ICE informed it has [Fernando] scheduled to be back in Minnesota tomorrow, 24 January 2026. [Fernando] is presently at El Paso, Texas." ECF No. 12 at 1.

On January 24, 2026, Fernando's Petition was granted. ECF No. 13. Considering Respondents' representation that Fernando would "be back in Minnesota tomorrow, 24 January 2026," ECF No. 12 at 1, Fernando was ordered released "from custody as soon as practicable, but not later than 48 hours after entry of this Order," ECF No. 13 at 6. On January 25, 2026, Fernando was released in El Paso, Texas, without his belongings. *See* ECF No. 17 ¶¶ 12–13. Respondents have not explained why they withheld Fernando's belongings when they released him. *See* ECF No. 21. Fernando's counsel paid $568.29

3

for Fernando's airfare to return to Minnesota.  *See* ECF No. 18 ¶ 14; *see also* ECF No. 18-1 (flight receipt).  Fernando seeks compensatory sanctions—namely, compensation for Fernando's airfare and attorneys' fees—caused by Respondents' violation of the January 20, 2026 Order temporarily enjoining Fernando's transfer.  ECF No. 16 at 2.

Respondents filed a 2-page letter in response to Fernando's motion for compensatory sanctions.  *See* ECF No. 21.  Respondents' letter begins by "acknowledging [Fernando] was released in El Paso, Texas, and that is a violation of this Court's Order."  ECF No. 21 at 1.  The letter then provides a chronology of Fernando's movement, along with Respondents' counsel's efforts to instruct the agency "[a]t all times" to return Fernando back to Minnesota.  *See id.* at 1–2.  The letter includes the following account:

> At 9:58 A.M. on 23 January 2026, ICE's tracking system showed Petitioner as detained at the Bishop Henry Whipple Federal Building (Whipple Building).  Subsequent requests for updates from the undersigned counsel still showed Petitioner as detained at the Whipple Building.  Opposing Party's [sic] communicated to the undersigned counsel the ICE information was incorrect, and Petitioner was in fact detained in Texas.  Upon this information, Petitioner communicated with the Agency's counsel to alert them on the discrepancy.  The undersigned counsel received Agency's confirmation Petitioner was in fact in Texas.
>
> At 3:51 P.M. on January 23, 2026, the Agency communicated Petitioner was scheduled to return to Minnesota on January 24.  At 8:20 PM on January 24, the undersigned counsel followed up with the Agency and transmitted the order for Petitioner's release.  At 9:08 P.M., the Agency's counsel confirmed the order had been transmitted to the Agency.
>
> At 1:30 P.M. on January 25, the undersigned counsel learned the January 24's flight had been cancelled and proceeded to request more information about the situation, specifically in the Agency efforts to return Petitioner to Minnesota.  At 2:40 P.M., Petitioner's counsel wrote to the Court, cc'ing the undersigned

4

> counsel, seeking clarification about the Court's Order. Simultaneously, the Agency represented it to the undersigned counsel, it was working to schedule Petitioner's return. However, the earliest it could return Petitioner was on Tuesday, January 27. This would have been outside the 48 hours allowed by the Court to release Petitioner, which is the most likely explanation for Agent Perez's confusion mentioned in Petitioner's counsel email to the Court on the January 25's email.

ECF No. 21 at 1–2. In a footnote, the letter explains that the "likely reason" that Fernando's January 24 flight from El Paso was canceled was a "major winter storm leading to [a] state emergency declaration" in Texas. *Id.* at 1 n.1. The letter further states that Respondents' counsel "does not have any indication the decision to release in Texas was made in willful disregard for [sic] the Court's order." *Id.* at 2. The letter concludes:

> It is undisputable the Agency needed to consult with the undersigned counsel before making the decision to release Petitioner in Texas. That did not happen. *Respondent acknowledges release in Texas was not in compliance with the expectations and Order of this Court.*

*Id.* at 2 (emphasis added). Finally, Respondents' counsel states that he is "deeply remorseful and offers his sincere apologies for the situation." *Id.* The letter includes no legal argument, authority, or other response to Fernando's request for compensatory sanctions.

"Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)). "Civil contempt may be employed either to coerce the [non-movant] into compliance with a court order or to compensate the

5

complainant for losses sustained, or both." *Chi. Truck Drivers v. Bhd. Lab. Leasing*, 207 F.3d 500, 505 (8th Cir. 2000). A compensatory civil-contempt sanction "must of course be based upon evidence of complainant's actual loss." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947)). "A party bringing a motion for civil contempt bears the initial burden of establishing a violation of a court order by clear and convincing evidence." *Walman Optical Co. v. Quest Optical, Inc*., No. 11-cv-96 (PJS/JJG), 2012 WL 3248150, at *4 (D. Minn. Aug. 9, 2012) (citing *Chi. Truck Drivers*, 207 F.3d at 505). If that violation is established, the burden shifts to the non-movant "to show an inability to comply." *Chi. Truck Drivers*, 207 F.3d at 505. To establish that "compliance is presently impossible," the nonmoving party must demonstrate "(1) that they were unable to comply, explaining why categorically and in detail, (2) that their inability to comply was not self-induced, and (3) that they made in good faith all reasonable efforts to comply." *United States v. Santee Sioux Tribe of Neb.,* 254 F.3d 728, 736 (8th Cir. 2001) (quoting *Chi. Truck Drivers*, 207 F.3d at 506).

Fernando is entitled to compensatory sanctions for Respondents' civil contempt of the January 20 Order. The Order enjoined Respondents from moving Fernando from the District of Minnesota during the pendency of his Petition. ECF No. 7. Respondents admit they violated the January 20 Order by transferring Fernando to El Paso, despite knowledge that his movement outside of this District was enjoined. *See* ECF No. 9 at 1–2; *see also* ECF No. 21. Respondents provide no explanation for Fernando's transfer to El Paso despite the enjoinment of his movement from this District. *See* ECF Nos. 9, 21. On January 23, I issued an Order requiring Respondents to identify Fernando's location and

6

the schedule for his return to the District of Minnesota, warning that absent assurance of Petitioner's return by January 24, 2026, an Order to Show Cause would issue. *See* ECF No. 11. There is no dispute that Respondents had actual notice of both the January 20 and January 23 Orders—on January 23, Respondents affirmatively "confirmed[ed] ICE informed it has [Fernando] scheduled to be back in Minnesota tomorrow, 24 January 2026." ECF No. 12. Despite this assurance, Fernando was released in El Paso on January 25, without his belongings.

As a result of Respondents' violation of the January 20 Order and their failure to cure that violation on their own, Fernando and his counsel incurred the undisputed and documented $568.29 expenditure for Fernando's return airfare.[2] To the extent Respondents imply that a canceled flight, a winter snowstorm, or haste to comply with the Court's January 24, 2026 Order directing Fernando's release excuse their contempt, these asserted justifications do not support an inability to comply with the January 20 Order. Respondents acknowledge they violated that Order. Accordingly, I find that Respondents' conduct constitutes civil contempt, and Respondents (as defined herein) are jointly and severally liable for compensatory civil contempt sanctions for airfare costs Fernando incurred because of the violation.[3]

---

[2] It seems reasonable to suspect that Fernando incurred attorneys' fees in securing his return and filing this motion, but supporting documentation for those attorneys' fees has not been provided. *See* ECF No. 16 at 9 n.2.

[3] We do not know which of the Respondents was directly responsible for the January 20, 2026 Order's violation. If Respondents wish to obtain an amended order that identifies which specific person or entity is directly responsible, Respondents should file a motion identifying the responsible Respondent and requesting this Order's amendment.

7

Fernando requested an evidentiary hearing on this motion. *See* ECF No. 22 at 4–5. Considering Respondents' admission that they violated the January 20 Order, I conclude an evidentiary hearing is unnecessary. Nonetheless, Respondents will be given the opportunity to request an evidentiary hearing. If Respondents wish to object to deciding this motion without an evidentiary hearing and request a hearing, they shall file an appropriate motion on or before February 28, 2026. Absent the filing of such motion, the following Order will be effective March 1, 2026, and judgment will thereafter be entered on this Order.

## ORDER

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT effective March 1, 2026**, Petitioner Fernando T.'s Motion for an Order to Show Cause and Request for Compensatory Sanctions [ECF No. 15] is **GRANTED** as follows:

1. Respondents are found in civil contempt of this Court's January 20, 2026 Order;

2. Compensatory civil contempt sanctions are awarded in favor of Petitioner in the amount of $568.29, representing Petitioner's documented travel expenses incurred as a direct result of Respondents' violation of the January 20, 2026 Order; and

3. Respondents shall pay the sum of $568.29 to Petitioner (or to Petitioner's counsel if payment was advanced by counsel) on or before April 1, 2026.

Dated:  February 23, 2026                                     s/ Eric C. Tostrud
                                                                Eric C. Tostrud
                                                                United States District Court